United States District Court
Southern District of Texas
**ENTERED**
March 05, 2024
Nathan Ochsner, Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

MICHELLE Y.,[1]      §
     §
    *Plaintiff,*      §
     §
v.      §      No. 4:22-cv-3498
     §
KILOLO KIJAKAZI,      §
Acting Commissioner of Social      §
Security,      §
     §
    *Defendant.*      §

## MEMORANDUM AND ORDER

Plaintiff Michelle Y. ("Plaintiff") filed this suit seeking judicial review of an administrative decision. ECF No. 1. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Plaintiff appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's claim for disability insurance benefits under Title II of the Social Security Act ("the Act").[2] Plaintiff filed a motion for summary judgment. Pl.'s MSJ, ECF No. 17. Commissioner filed a response, Def.'s Response, ECF No. 20, which the Court construes as a motion for summary judgment, *Samuels v. Kijakazi*, No. 3:22-CV-00198, 2023 WL 2774460,

---

[1] Pursuant to the May 1, 2018 "Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions" issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court uses only Plaintiff's first name and last initial.

[2] On February 23, 2023, based on the parties' consent, the case was transferred to this Court to conduct all proceedings pursuant to 28 U.S.C. § 636(c). Order Transferring, ECF No. 13.

at *1 n.1 (S.D. Tex. Apr. 4, 2023) (quoting *Roe v. Colvin*, No. 2:13-cv-02265, 2014 WL 7239458, at *1 n. 1 (E.D. Cal. Dec. 17, 2014).[3] Plaintiff filed a reply. Pl.'s Reply, ECF No. 21. Plaintiff seeks an order rendering benefits or remand for further consideration, arguing that the Administrative Law Judge's ("ALJ") residual function capacity ("RFC") determination is unsupported by substantial evidence and is the product of legal error where he failed to properly evaluate the opinion evidence. ECF No. 18 at 1. Commissioner counters that the ALJ properly evaluated the medical source opinions. ECF No. 20. Based on the briefing, the record, and the applicable law, the Court finds that the ALJ failed to properly evaluate the opinion evidence in making her RFC determination. Thus, Plaintiff's motion for summary judgment is granted, Defendant's motion for summary judgment is denied, and this matter remanded.

## I.     BACKGROUND

Plaintiff is 55 years old, R. 109, 124, 311, 347,[4] and completed high school. R. 352. Plaintiff worked as a salesperson flowers, salesperson horticultural products, and general merchandise salesperson. R. 120–21, 143, 352. Plaintiff alleges a disability onset date of June 6, 2018. R. 14, 110, 347. Plaintiff claims she suffers from physical impairments. R. 351.

---

[3] Defendant seeks an order affirming the Commissioner's decision and dismissing Plaintiff's complaint. ECF No. 20 at 8.

[4] "R." citations refer to the electronically filed Administrative Record, ECF No. 10.

On March 29, 2019, Plaintiff filed her application for disability insurance benefits under Title II of the Act. R. 109, 311. Plaintiff based[5] her application on atrial fibrillation, [6] diverticulitis, [7] and back problems. R. 109, 351. The Commissioner denied Plaintiff's claim initially, R. 109–23, and on reconsideration. R. 124–46.

A hearing was held before an Administrative Law Judge ("ALJ"). An attorney represented Plaintiff at the hearing. R. 34–66. Plaintiff and a vocational expert ("VE") testified at the hearing. R. 34–66. The ALJ issued a decision denying Plaintiff's request for benefits. R. 148–67. Following remand from the Appeals Council, the ALJ held another hearing, and again issued a decision denying benefits.[8] R. 8–30; 34–66; 169–70. The Appeals Council denied Plaintiff's request for review, upholding the ALJ's decision. R. 1–7.

---

[5] For Plaintiff's disability insurance benefits, the relevant time period is June 6, 2018—Plaintiff's alleged onset date—through December 31, 2023—Plaintiff's last insured date. R. 14. The Court will consider medical evidence outside this period to the extent it demonstrates whether Plaintiff was under a disability during the relevant time frame. *See Williams v. Colvin,* 575 F. App'x 350, 354 (5th Cir. 2014); *Loza v. Apfel,* 219 F.3d 378, 396 (5th Cir. 2000).

[6] Atrial fibrillation is an irregular and often very rapid heart rhythm. *See* https://www.mayoclinic.org/diseases-conditions/atrial-fibrillation/symptoms-causes/syc-20350624 (last visited November 28, 2023).

[7] Diverticula are small, bulging pouches that can form in the lining of your digestive system. When one or more of the pouches become inflamed, and in some cases infected, that condition is known as diverticulitis. *See* https://www.mayoclinic.org/diseases-conditions/diverticulitis/symptoms-causes/syc-20371758 (last visited November 28, 2023).

[8] An ALJ must follow five steps in determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4). The ALJ here determined Plaintiff was not disabled at step four. R. 24. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date through her date last insured. R. 14 (citing 20 C.F.R. § 404.1571 *et*

Plaintiff appealed the Commissioner's ruling to this Court. Compl., ECF No. 1.

## II.     STANDARD OF REVIEW OF COMMISSIONER'S DECISION.

The Social Security Act provides for district court review of any final decision of the Commissioner that was made after a hearing in which the claimant was a party. 42 U.S.C. § 405(g). In performing that review:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . ., with or without remanding the cause for a rehearing. The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive[.]

*Id.* Judicial review of the Commissioner's decision denying benefits is limited to determining whether that decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied. *Id.*; *Boyd v. Apfel,*

---

*seq.*). At step two, the ALJ found that Plaintiff has the following severe impairments: circulation disorder, anxiety/depression, atrial fibrillation, diverticulosis, obesity, headaches, and a benign tumor in her right breast. R. 14 (citing 20 C.F.R. §§ 404.1520 (c)). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the regulations that would lead to a disability finding. R. 14–16 (referencing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). The ALJ found that Plaintiff has the RFC to perform light work as defined in 20 CFR § 404.1567(b), with the following limitations: occasionally climb ramps and stairs, but should never climb ladders, ropes, or scaffolds; occasionally, balance, stoop, kneel crouch and crawl; avoid even moderate exposure to extreme heat, extreme cold, fumes, dusts, odors, gases, poor ventilation, wetness, and humidity; avoid all exposure to dangerous moving machinery (this would exclude motor vehicles) and unprotected heights; avoid concentrated exposure, (which means the exposure can occur at the frequent level or below), to wet, slippery, or uneven surfaces; frequently reach in all directions including overhead bilaterally; occasionally push, pull, and operate foot controls bilaterally; remember and follow detailed, but not complex instructions; and perform the tasks assigned, but not at a production rate pace, however she can meet the end of day work goals. R. 16–22. At step four, the ALJ determined that through the date last insured, Plaintiff was able to perform her past relevant work as a salesperson. R. 22–24 (citing 20 C.F.R. § 404.1565). Therefore, the ALJ concluded that Plaintiff was not disabled. R. 24.

239 F.3d 698, 704 (5th Cir. 2001); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotations omitted). It is "more than a scintilla but less than a preponderance." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). The "threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

The Court weighs four factors to determine "whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history." *Conley-Clinton v. Saul*, 787 F. App'x 214, 216 (5th Cir. 2019) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

A reviewing court may not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for that of Commissioner, even if the evidence preponderates against Commissioner's decision. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Even so, judicial review must not be "so obsequious as to be meaningless." *Id.* (quotations omitted). The "substantial evidence" standard is not a rubber stamp for Commissioner's decision and involves more than a search for evidence supporting Commissioner's findings. *Singletary v. Brown*, 798 F.2d 818, 822–23 (5th Cir. 1986); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather,

a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting Commissioner's findings. *Singletary*, 798 F.2d at 823. "Only where there is a 'conspicuous absence of credible choices or no contrary medical evidence' will we find that the substantial evidence standard has not been met." *Qualls v. Astrue*, 339 F. App'x 461, 464 (5th Cir. 2009).

## III.   THE SHIFTING BURDEN OF PROOF.

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be so severe that the claimant is "incapable of engaging in any substantial gainful activity." *Foster v. Astrue*, No. H-08-2843, 2011 WL 5509475, at *6 (S.D. Tex. Nov. 10, 2011) (citing *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992)). A claimant is eligible for benefits only if the onset of the impairment

started by the date the claimant was last insured. *Id.* (citing *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990)).

Commissioner applies a five-step sequential process to determine disability status. *Id.* The claimant bears the burden of proof at the first four steps to establish that a disability exists. *Farr v. Astrue*, No. G-10-205, 2012 WL 6020061, at *2 (S.D. Tex. Nov. 30, 2012). The burden shifts to Commissioner at step five to show that the claimant can perform other work. *Id.* The burden then shifts back to the claimant to rebut this finding. *Id.* If at any step in the process Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Id.*

## IV.    PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT.

Plaintiff raises one issue: that substantial evidence does not support the ALJ's RFC determination because the ALJ failed to properly evaluate the medical opinions of Dr. Karen Y. Anderson and Dr. Teresa L. Tarver. ECF No. 18 at 1, 6. Plaintiff contends that the ALJ failed to comply with the requirements of 20 C.F.R. § 404.1520c(c) by not addressing each opinion's consistency and supportability. *Id.* at 8. Plaintiff asserts that although the ALJ found Dr. Anderson's opinion somewhat persuasive, the ALJ's RFC determination that Plaintiff can perform light work contradicts Dr. Anderson's opinion that Plaintiff cannot tolerate prolonged weight-bearing. *Id.* at 7. Further, Plaintiff argues that although the ALJ found Dr. Tarver's opinion that Plaintiff is "mildly impaired in her ability to make occupational,

personal, and social adjustments" to be somewhat persuasive, the ALJ's RFC determination did not contain any limitations in interaction, adaptation, response to changes, or tolerance of work stress. *Id.* at 8. Commissioner responds that the ALJ properly evaluated both opinions. ECF No. 20 at 5–7.

## A.   *The ALJ Must Analyze Each Medical Opinion's Supportability and Consistency.*

Between the third and fourth steps of the sequential analysis, the ALJ must decide the claimant's RFC, which is defined as "the most the claimant can still do despite his [or her] physical and mental limitations . . . based on all relevant evidence in the claimant's record." *Winston v. Berryhill*, 755 F. App'x 395, 399 (5th Cir. 2018) (citation omitted). The RFC determination is the "sole responsibility of the ALJ." *Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012) (quoting *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1999)). When making the RFC determination, the ALJ must consider all medical opinions contained in the record. 42 U.S.C. § 405(b)(1). The ALJ must "incorporate limitations into the RFC assessment that were most supported by the record." *Conner v. Saul*, No. 4:18-CV-657, 2020 WL 4734995, at *8 (S.D. Tex. Aug 15, 2020) (citing *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)). As an administrative factfinder, the ALJ is entitled to significant deference in deciding the appropriate weight to accord the various pieces of evidence in the record, including the credibility of medical experts and the weight to be accorded their opinions. *See Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir.

1985).

For claims filed on or after March 27, 2017, like the instant case, the Social Security Administration requires ALJs to explain how they evaluate a medical opinion's persuasiveness. *See Johnson v. Kijakazi*, No. 4:20-CV-04271, 2022 WL 3588042, at *3 (S.D. Tex. Aug. 22, 2022) (citing *Shugart v. Kijakazi*, 2022 WL 912777, at *3 (S.D. Tex. Mar. 29, 2022) (citing 20 C.F.R. §§ 404.1520c, 416.920c)). Relevant herein, the ALJ must "consider prior administrative medical findings and medical evidence from . . . Federal or State agency medical or psychological consultants," but is not required to adopt those findings. *Howen v. Saul*, No. Civ. Act. H-19-4358, 2021 WL 1169331, at *6 (S.D. Tex. Mar. 25, 2021) (citing 20 C.F.R. § 404.1513a(b), (b)(1)). "As with medical opinions, the ALJ must articulate how persuasive he finds each based on the consideration of the factors enumerated in 20 C.F.R. § 404.1520c(c)," and "must articulate how supportability and consistency were considered." *Id.* (citing 20 C.F.R. § 404.1520c(a), (b)). "In evaluating persuasiveness, the ALJ considers five factors: (i) supportability; (ii) consistency; (iii) the source's relationship with the patient; (iv) the source's specialty; and (v) 'other factors that tend to support or contradict' the opinion." *Id.* (citing *Shugart*, 2022 WL 912777, at *3 (citing and quoting 20 C.F.R. § 404.1520c(c))). "Among those factors, the most important are supportability and consistency." *Johnson*, 2022 WL 3588042, at *3 (citing *Shugart*, 2022 WL 912777,

at *3 (citing § 404.1520(c)(b) (2))).

"The supportability and consistency factors involve different analyses and require the ALJ to explain his reasoning for his persuasiveness finding with respect to each factor." *Rai R. v. Kijakazi*, No. 4:21-CV-2270, 2022 WL 4450487, at *4 (S.D. Tex. Sept. 23, 2022) (citing *Kilby v. Kijakazi*, No. 4:20-cv-03035, 2022 WL 1797043, at *3 (S.D. Tex. Mar. 15, 2022)). "With respect to 'supportability,' 'the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations *presented by the medical source* increase,' and consistency is 'an all-encompassing inquiry focused on how well a medical source is supported, or not supported, *by the entire record*.'" *Id.* (emphasis in original) (quoting *Luckett v. Kijakazi*, No. 4:20-CV-04002, 2021 WL 5545233, at *4 (S.D. Tex. Nov. 26, 2021) (citing 20 C.F.R. §§ 404.1520c(c)(1), 404.920c(c)(1)) (quoting *Vellone v. Saul*, 1:20-cv-00261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021))).

## B.    *Dr. Anderson and Dr. Tarver Provided Medical Opinions.*

On August 8, 2019, Disability Determination Services referred Plaintiff to Dr. Tarver for an evaluation of Plaintiff's concentration, memory, understanding, and task completion.[9] Dr. Tarver is a licensed psychologist.[10] Dr. Tarver found

---

[9] R. 495 (Dr. Tarver's notes from her clinical interview and mental status examination of Plaintiff on 8/8/2019).

[10] R. 498 (Dr. Tarver's exam notes).

Plaintiff to be sincere, "forthcoming and cooperative," and understanding of directions and requests. [11] Dr. Tarver noted Plaintiff's symptoms of persistent negative emotions, muscle tensions, irritability, anhedonia, [12] sleep issues, and periods of increased activity like shopping sprees. [13] After putting Plaintiff through various examinations related to Plaintiff's presentation, [14] immediate, working and recent memory and concentration, [15] fund of knowledge, [16] thought content and process, [17] and judgment, Dr. Tarver made the following observations about Plaintiff: [18]

> [Plaintiff] does not appear to be impaired in her ability to reason; she appears to be at least mildly impaired in her ability to make

---

[11] R. 495 (Dr. Tarver's exam notes).

[12] Anhedonia is the inability to feel pleasure. *See* https://www.webmd.com/depression/what-is-anhedonia (last visited November 29, 2023).

[13] R. 495 (Dr. Tarver's exam notes).

[14] Dr. Tarver observed that Plaintiff was dressed appropriately for her age and the weather, neatly groomed, and had good hygiene. She also found Plaintiff did not have problems with vision, hearing, speech, or motor activity, and was oriented to person, place, time, and situation. Dr. Tarver noted Plaintiff was "very pleasant" and "her mood was depressed with congruent effect." R. 497 (Dr. Tarver's exam notes).

[15] Dr. Tarver noted Plaintiff was immediately able to repeat three words, and after delay and distraction and with cues, she was able to repeat one word—upon giving her a multiple choice, she remembered the three words. Plaintiff could repeat series of 3, 4, 5 numbers forward, but not backward. Plaintiff could not state every other letter from the alphabet beginning with P but was able to do double-digit subtraction in her head. R. 497 (Dr. Tarver's exam notes).

[16] Dr. Tarver noted that Plaintiff could name three planets, 4 U.S. states, and the current plus three former U.S. presidents. R. 497 (Dr. Tarver's exam notes).

[17] Dr. Tarver noted that Plaintiff's thinking was goal directed without unusual themes or content, and that Plaintiff demonstrated fair capacity for abstraction in her ability to identify similarities in word pairs and interpret proverbs. R. 497 – 98 (Dr. Tarver's exam notes).

[18] R. 498 (Dr. Tarver's exam notes).

occupational, personal, and social adjustments. With treatment that includes psychoeducation, distress tolerance, and CBT, the level of impairment would be expected to decrease.

Dr. Tarver also stated that Plaintiff appeared to have "persistent depressive disorder with pure dysthymic syndrome," and "unspecified trauma and stressor related disorder."[19]

On May 29, 2019, Dr. Anderson, M.D., completed an "internal medicine examination for disability evaluation" "solely for the purpose of disability evaluation."[20] Dr. Anderson gathered a history from Plaintiff, reviewed Plaintiff's records, and conducted her own physical examination on Plaintiff.[21] At the conclusion of her report, Dr. Anderson stated:[22]

> [Plaintiff's] allegations and conditions were reviewed in detail. . . . Collectively, they may impact [Plaintiff's] ability to perform tasks that require physical endurance, prolonged weight-bearing or heavy lifting. It is imperative to meticulously control all co-morbidities, with particular emphasis on [Plaintiff's] issues related to cardiovascular status and gastrointestinal status. Fall precautions may need to be considered. Lifestyle modification may be beneficial regarding obesity and weight reduction. [Plaintiff's] psychological status may possibly require special consideration.

As relevant to Plaintiff's RFC argument, ECF No. 18 at 6–7, Dr. Anderson noted in

---

[19] R. 498 (Dr. Tarver's exam notes).

[20] R. 487 (Dr. Anderson's exam notes from 5/29/2019).

[21] R. 487–90 (Dr. Anderson's exam notes).

[22] R. 490 (Dr. Anderson's exam notes).

her examination and Plaintiff's history that Plaintiff suffered from arrhythmias[23] causing dizziness, lightheadedness, syncope, and palpitations, [24] "clinically significant peripheral edema,"[25] and lumbar disc disease with radiculopathy[26] and "gait disturbance."[27]

### C.    *The ALJ Improperly Evaluated Both Opinions.*

The ALJ determined Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that [Plaintiff] can perform a full range of light work, 20 CFR 40[4].1567(b), except that she can occasionally climb ramps and stairs, but should never climb ladders, ropes, or scaffolds. [Plaintiff] can occasionally, balance, stoop, kneel crouch and crawl. She should avoid even moderate exposure to extreme heat, extreme cold, fumes, dusts, odors, gases, poor ventilation, wetness, and humidity. She should avoid all exposure to dangerous moving machinery (this would exclude motor vehicles) and unprotected heights. [Plaintiff] should avoid concentrated exposure, (which means the exposure can occur at the frequent level or below), to wet, slippery, or uneven surfaces. She can frequently reach in all directions including overhead bilaterally. She can occasionally push, pull, and operate foot controls bilaterally. She can remember and follow detailed, but not complex instructions. She can perform the tasks

---

[23] An arrhythmia is an abnormal heartbeat. Arrhythmias can start in different parts of your heart and can be too fast, too slow or just irregular. *See* https://my.clevelandclinic.org/ health/diseases/16749-arrhythmia (last visited November 29, 2023).

[24] R. 487 (Dr. Anderson's exam notes).

[25] R. 488, 490 (Dr. Anderson's exam notes noting leg swelling and edema in the legs, feet, and ankles).

[26] Radiculopathy is caused by a pinched nerve in your spine and will cause the area around your pinched nerve to feel painful, numb, or tingly. *See* https://my.clevelandclinic.org/ health/diseases/22564-radiculopathy (last visited November 29, 2023).

[27] R. 489–90 (Dr. Anderson's exam notes, noting decreased range of motion and "all maneuvers painful" regarding Plaintiff's chest and lower back exams and noting Plaintiff was ambulatory without assistance and walked with a slow cadence and limp due to pain, but could not perform toe or heel walking due to pain and unsteadiness).

assigned, but not at a production rate pace, however she can meet the end of day work goals.

R. 16–17. In reaching this determination, the ALJ considered Plaintiff's symptoms, hearing testimony, medical history, and various medical opinions, including those of Dr. Anderson and Dr. Tarver.

The ALJ summarized Dr. Tarver's opinion and found it to be "somewhat persuasive and afforded some weight," and explained this reasoning:

> While the assessment does not provide a function-by-function assessment of [Plaintiff's] abilities as required by the Social Security provisions, the opinion is not inconsistent with the residual functional capacity set forth herein. Specifically, the opinion indicates [Plaintiff] has no marked limitations. Moreover, the evidence available at the hearing level supports a finding of limitations but no more than at the moderate level in three of the B criteria, and no more than mildly limited in her ability to interact with others. Accordingly, the evidence available at the hearing level is consistent with the residual functional capacity set forth herein.

R. 20. The ALJ also summarized Dr. Anderson's opinion and found it to be "somewhat persuasive and afforded some weight," and explained:

> Although the opinion does not provide a function-by-function assessment of [Plaintiff's] abilities, the overall findings are not inconsistent with the residual functional capacity set forth herein. Moreover, the evidence available at the hearing level supports restrictions on [Plaintiff's] ability to exert [herself], perform postural movements, use [her] extremities, and to be exposed to workplace hazards. Accordingly, the evidence available at the hearing level is consistent with the residual functional capacity set forth herein.

R. 21.

Despite the cursory statement that the ALJ found Drs. Tarver and Anderson's

opinions "somewhat persuasive," she wholly failed to articulate how the medical evidence and each doctor's explanations supported their opinions or how consistent their opinions were with other sources, as is required by § 404.1520c(b)(2), (c)(1), (c)(2). In other words, this is in direct violation of the regulation's requirement that the ALJ articulate how he considered supportability and consistency and is error. *See Howen*, 2021 WL 1169331, at *6.[28]

Importantly, although the ALJ states that each doctor's overall findings were not inconsistent with the ALJ's RFC determination, she does not explain in what ways the limitations imposed in her RFC assessment were consistent with Dr. Tarver's opinion that Plaintiff is "mildly impaired in her ability to make occupational, personal, and social adjustments" or Dr. Anderson's opinion that Plaintiff's physical conditions "may impact [her] ability to perform tasks that require physical endurance, prolonged weight-bearing or heavy lifting," and that "[f]all precautions may need to be considered." Upon comparing the ALJ's RFC assessment and the opinions of Dr. Anderson and Dr. Tarver, the Court does not find that the medical opinions' findings are accounted for. *Id.*

---

[28] This case is substantively similar to *Howen v. Saul*. *See* 2021 WL 1169331, at *6. In *Howen*, the court found that the ALJ's explanation of the weight given the medical opinion—that the opinion was "somewhat persuasive, however, the [ALJ] imposed more restrictive limitations" without more—was error because it "wholly failed to articulate how the medical evidence and [the doctor's] explanations supported her opinion or how consistent her opinion was with other sources, and failed to explain in what ways the limitations that he imposed in his RFC assessment were 'more restrictive' than [the doctor's] or to explain why the medical opinion was not adopted where it conflicted with the RFC assessment." *Id.*

First, Dr. Tarver opined that Plaintiff is "mildly impaired in her ability to make occupational, personal, and social adjustments." The ALJ found the following mental limitations: Plaintiff can remember and follow detailed, but not complex instructions, can perform the tasks assigned, but not at a production rate pace, and can meet the end of day work goals. These two determinations do not address the same limitations—the ALJ's RFC assessment does not address Plaintiff's ability to adjust occupationally, personally, or socially. In fact, the ALJ's RFC assessment imposes no limitations on Plaintiff's contact with the general public or Plaintiff's ability to respond to stress or changes in a typical work setting.

Second, Dr. Anderson opined that Plaintiff is impacted in her "ability to perform tasks that require physical endurance, prolonged weight-bearing or heavy lifting," and that "[f]all precautions may need to be considered." The ALJ limited Plaintiff's physical abilities to light work, except that Plaintiff can "frequently reach in all directions including overhead bilaterally," "occasionally push, pull, and operate foot controls bilaterally," "occasionally climb ramps and stairs, but should never climb ladders, ropes, or scaffolds," "occasionally, balance, stoop, kneel crouch and crawl," and avoid most workplace hazards. Pursuant to 20 C.F.R. § 404.1567(b),

> Light work involves *lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds*. Even though the weight lifted may be very little, *a job is in this category when it requires a good deal of walking or standing*, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range

of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b) (emphasis added).[29] Aside from the classification of "light work," nothing in the ALJ's RFC assessment addresses limitations on physical endurance, weight-bearing or heavy lifting. Given the above definitions of light work that include frequent lifting, carrying, and standing, the ALJ did not limit Plaintiff's ability to lift and bear weight and physically endure.

In sum, the ALJ failed to address the consistency and supportability of each doctor's opinion, as is required by the regulations. Further, even though the ALJ found both doctors' opinions to be "somewhat persuasive," there is no evidence that

---

[29] SSR 83-10 explains "light work" as:

The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing--the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). Relatively few unskilled light jobs are performed in a seated position.

"Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping. Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk. They require use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work.

*Titles II & Xvi: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2*, SSR 83-10 (1983).

the ALJ adopted any of their proposed limitations in her RFC determination, even though the ALJ noted in her decision that her proposed RFC was consistent with the doctors' opinions. Because the ALJ failed to explain how her RFC was consistent with the doctors' opinions, the Court is left to guess "at what the ALJ meant." *See Howen*, 2021 WL 1169331, at *7 ("Because the ALJ did not speak to which limitations the ALJ was incorporating into the RFC and which he was not, the court is left to guess at what the ALJ meant by his statement that "the undersigned imposed more restrictive limitations" than Dr. Formby suggested. . . ."). "The court will not engage in guesswork." *Id.*[30] "Absent sufficient articulation, the [C]ourt cannot discern whether the ALJ's assessments of the persuasiveness of [these] medical opinion[s] . . . are supported by substantial evidence and, in turn, whether the RFC assessment is supported by substantial evidence." *See id.*

### D.   The ALJ Committed Harmful Error.

"Errors alone do not justify relief from an ALJ's decision." *See id.* (citing *Kneeland v. Berryhill*, 850 F.3d 749, 761 (5th Cir. 2017) (quoting *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007))). The Fifth Circuit "requires . . . a showing that the claimant was prejudiced by the agency's failure to follow a particular rule before

---

[30] Insofar as Commissioner requests the Court to engage in creating a post hoc rationale for the ALJ's decision, the Court will not do so because "[d]oing so would 'usurp[ ] the agency's function of weighing and balancing the evidence in the first instance.'" *Id.* (quoting *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008)). "Judicial review is limited to the reasons stated in the ALJ's decision; the magistrate judge should not have supplied possible reasons for rejecting a physician's opinion in order to affirm." *Id.* (quoting *Carpenter*, 537 F.3d at 1267).

such a failure will be permitted to serve as the basis for relief from an ALJ's decision." *Id.* (quoting *Shave v. Apfel*, 238 F.3d 592, 597 (5th Cir. 2001)). "Prejudice can be established by showing that the additional considerations '"might have led to a different decision."' *Id.* (quoting *Mettlen v. Barnhart*, 88 F. App'x 793 (5th Cir. 2004) (quoting *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000))).

Here, the ALJ denied Plaintiff benefits at step four of the sequential analysis,[31] determining that Plaintiff could perform relevant past work as a salesperson. R. 22. The ALJ found Plaintiff could perform her past relevant work as a salesperson based on the VE's testimony regarding DOT classification of Plaintiff's prior work and their corresponding RFCs, compared with the ALJ's determination of Plaintiff's RFC. R. 22, 55–56. It is not clear based on the current record whether if posed with a more limited RFC which would include limitations like those contemplated Dr. Tarver and Dr. Anderson contemplated, then the VE would still testify that Plaintiff could perform her past relevant work.[32] *See Howen*, 2021 WL 1169331, at

---

[31] At step four, the ALJ must determine whether Plaintiff has the RFC to perform the requirements of her past relevant work. 20 CFR 404.1520(f). Past relevant work means work performed, either as Plaintiff actually performed it or as it is generally performed in the national economy, within the last 15 years or 15 years prior to the date that disability must be established, and the work must have lasted long enough for Plaintiff to learn to do the job and have been substantial gainful activity. 20 CFR §§ 404.1560(b), 404.1565. If Plaintiff has the residual functional capacity to do her past relevant work, then she is not disabled.

[32] The ALJ alternatively considered whether Plaintiff was disabled at step five based on her assessed RFC and also based on a sedentary level. R. 22–24. But, noticeably absent from this alternative analysis is any limitation on Plaintiff's mental abilities. Accordingly, remand is still appropriate.

*8. Therefore, the ALJ committed harmful error and her decision should be reversed and this matter remanded for proper consideration of Dr. Anderson's and Dr. Tarver's opinions and a reassessment of Plaintiff's RFC.

## V.      CONCLUSION

Therefore, it is **ORDERED** that Plaintiff's motion for summary judgment, ECF No. 17, is **GRANTED**. The Defendant's motion for summary judgment, ECF No. 20, is **DENIED**. The ALJ's decision denying benefits is **REVERSED,** and the case is **REMANDED** for proceedings consistent with Memorandum and Order.

Signed at Houston, Texas, on March 5, 2024.

**Dena Hanovice Palermo**
**United States Magistrate Judge**